[No. 19568. . Department Two.   January 5, 1926.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT KITTLE, *Appellant.*[1]

[1] INTOXICATING LIQUORS (53)—SEARCHES AND SEIZURES—AUTHORITY IN ABSENCE OF SEARCH WARRANT. The sheriff having arrested accused on reasonable grounds to believe that he was committing an offense in his presence, liquor then taken from accused will not be suppressed as evidence, though the sheriff had no warrant for the arrest or for a search.

[2] ARREST (6)—AUTHORITY TO ARREST WITHOUT WARRANT—PROBABLE CAUSE. A sheriff has reasonable cause to believe that accused had liquor in his possession, where that was probable from the reputation given him, and accused entered premises from an automobile, at night, with a sack in his possession such as is commonly used in transporting liquor.

[3] INTOXICATING LIQUORS (49)—PROSECUTIONS—EVIDENCE—ADMISSIBILITY. In a prosecution for unlawful possession of liquor, for which the accused was arrested upon suspicion, the source of the sheriff's information in entertaining the suspicion is immaterial.

Appeal from a judgment of the superior court for Columbia county, Kuykendall, J., entered May 25, 1925, upon a trial and conviction of unlawful possession of intoxicating liquors. Affirmed.

*Leon B. Kenworthy,* for appellant.

*R. M. Sturdevant,* for respondent.

[1]Reported in 241 Pac. 962.

TOLMAN, C. J.—Appellant was charged by information with having in his possession, unlawfully, intoxicating liquor other than alcohol, and appeals from a conviction upon that charge.

The questions raised by the assignments of error mainly relate to the denial of appellant's motion to suppress the evidence consisting of eleven pints of liquor seized by the sheriff at the time of the arrest.

It appears that appellant had, for some time, been a boarder and roomer at the home of one Brown in the city of Dayton; that the sheriff had information that, at the time in question, appellant would bring liquor to the Brown premises; that appellant's general reputation was such as to fit with the information thus given to the sheriff; and accordingly the sheriff went to and waited upon the Brown premises, but without a search warrant, or any warrant for the arrest of the appellant. At some hour in the night time, not definitely fixed, the sheriff, from his place of concealment on the Brown premises, saw an automobile driven up, and, as it slackened its speed, he saw the appellant leave the automobile with a sack in his possession, enter the Brown yard and proceed toward an outhouse or toilet, presumably upon the rear of the premises. The sheriff immediately followed appellant into the toilet, turned his flashlight upon him, placed him under arrest and took from him the sack which then contained the eleven pints of intoxicating liquor.

[1, 2] It is first argued that the search (without a warrant) preceded the arrest. We do not so read the evidence. It seems clear that appellant was arrested and the liquor then seized. The record reveals ample evidence to show reasonable cause for the arrest. The reputation of the appellant, the information given to the sheriff of his purpose, the entry of the premises from a

moving automobile in the night time with a sack in his possession, which we here know to be the container most commonly used in transporting packages of liquor,—all tend to, and taken together, strongly support the sheriff's conclusion that an offense was being committed in his presence; and therefore the arrest was fully justified. *State v. Llewellyn,* 119 Wash. 306, 205 Pac. 394; *State v. Nilnch,* 131 Wash. 344, 230 Pac. 129; and cases there cited.

There being here involved no question of unreasonable search, it is unnecessary to inquire into the subject of what rights appellant had as a roomer and boarder in the Brown home, or whether the outhouse is to be deemed a part of the dwelling. The offense, being committed in the presence of the officer, justified his passage through the Brown yard and the pushing open of the half-closed door of the outhouse in order to make the arrest.

[3] The remaining question is as to the trial court's refusal to require the sheriff to disclose the source of the information upon which he acted.

Underhill on Criminal Evidence (3d ed.), § 287, pp. 395, 396, states the rule in the following language:

"The proper administration of justice and the protection of society against criminals imperatively require that persons should be encouraged in performing the duty incumbent upon all, of communicating to the proper officials any information which they may possess regarding the commission of a crime, or the identity or whereabouts of the criminal. To this end the disclosure in court of the names of persons who gave such information, either by a police official who made the arrest, by the informer himself, or by any other person, will not be permitted. Under the original rule not only was the name of the informer and the name of the magistrate or other person to whom information was given excluded, but every communication made, or act done, leading up to the detection of a crime, or to the appre-

hension of the criminal, was excluded from evidence in a criminal trial. This is doubtless a just rule in civil cases where the question of guilt is involved collaterally, as in an action for slander or libel contained in a communication to the police. But when the question arises in a criminal trial, and the information is material to determine the defendant's innocence, it would seem both reasonable and just that the necessity and desirability of the disclosure and the question whether the public interests would be benefited or would suffer, should be solely for the judicial discretion upon the circumstances of the case.''

" 'It is perfectly right,' so it is stated by Eyre, Ch. J., 'that all opportunities should be given to discuss the truth of the evidence given against a prisoner; but there is a rule which has universally obtained on account of its importance to the public for the detection of crimes, that those persons who are the channel by means of which the detection is made should not be unnecessarily disclosed; if it can be made to appear that it is necessary to the investigation of the truth of the case that the name of the person should be disclosed, I should be very unwilling to stop it; but it does not appear to me that it is within the ordinary course to do it, or that there is any necessity for it in the present case.' It has therefore been held that a police officer who has arrested a prisoner will not be bound to disclose the name of the person from whom he received information leading to the arrest. On the other hand, on an indictment for poisoning, Cockburn, Ch. J., when a police officer declined to answer from whom information concerning certain poison was obtained, ordered the answer to be given, such answer being material. The distinction is, materiality. When such information is material to the issue, it cannot be withheld. But when it is immaterial, the courts will not compel its disclosure. This immunity, however, extends only to official counsels. 'A witness for the prosecution in a trial for riot may be compelled to state, on cross-examination, whether he is a member of a secret society organized to suppress a sect to which the defendant be-

longs.' '' Wharton's Criminal Evidence, § 515, pp. 1058, 1059.

So far as the record here reveals, the source of the sheriff's information was wholly immaterial to the issue involved and nothing appears from which we could say that the trial court abused his discretion in the ruling complained of.

Finding no error, the judgment appealed from is affirmed.

PARKER, MAIN, and MITCHELL, JJ., concur.

MACKINTOSH, J., concurs in the result.